34753.  PAYNE *v.* NORRIS.

DECIDED SEPTEMBER 19, 1953—REHEARING DENIED OCTOBER 5, 1953.

*Colley & Orr,* for plaintiff in error.

*Randall Evans, Jr.,* contra.

TOWNSEND, J. ■ Error is assigned in special ground 1 on the charge of the court, as follows: "I also call your attention to another principle of law right at this point on voluntary payments. Payments of taxes or other claims, made through ignorance of the law, or where the facts are all known, and there is no misplaced confidence and no artifice, deception, or fraudulent practice used by the other party, are deemed voluntary, and cannot be recovered back, unless made under the urgent and immediate necessity therefor, or to releaase person or property from detention, or to prevent an immediate seizure of person or property. Filing a protest at the time of payment does not change the rule. I give you that principle of law in charge in reference to one contention particularly in this case, and that is, that Mrs. Payne contends that she paid a certain amount of money for picking cotton on that particular plantation on which Mr. Norris was farming. Mr. Norris, on the other hand, contends, gentlemen, that he did not authorize Mrs. Payne to pay for the additional cotton pickers, that he already had labor enough to gather the crops and that was a voluntary act upon her part and unauthorized by him, that under his contract with

Mrs. Payne he was to furnish the labor. Of course, that is an issue in the case. Mrs. Payne contends, on the one hand, that Mr. Norris authorized her to do that, while on the other hand, Mr. Norris contends he did not authorize it, that it was a voluntary payment. Now, I call your attention to this principle of law, that if you should find there was a voluntary payment upon the part of Mrs. Payne as to the cotton pickers, then in that event, I charge you that she would not be entitled to a credit for that amount. On the other hand, if you should believe that it was authorized by Mr. Norris, then, in that event, I charge you that she would be entitled to have that considered in your determination of the case."

It was undisputed that, under the agreement between the parties as originally made, the plaintiff was to furnish all labor; it was also undisputed that the defendant did, in fact, spend $656.66 on cotton pickers. The counter-affidavit alleged: "During the cotton picking season of 1952, defendant paid the sum of $656.66 to laborers to have the cotton picked that was being raised by plaintiff and defendant on shares, it being the duty of plaintiff to furnish labor—$656.66." This allegation was demurred to because "the allegations . . . show that plaintiff's obligation was to pick the cotton, or have it picked; and it appears that defendant was a mere volunteer, and made such payment as she is alleged to have made without any authorization from defendant and without any obligation to repay her therefor." The demurrer was overruled and no exceptions were preserved. The defendant contends that, because of these facts, it became the law of the case that she was not acting as a mere volunteer in paying for such labor, and that the court erred in submitting the issue to the jury. This is not, however, entirely accurate, as it became the law of the case only that the allegations did not *on their face* establish that the defendant was a volunteer, but decided nothing as to what might be proved upon the trial of the case. See *Peacock* v. *Peacock*, 172 *Ga.* 335 (157 S. E. 666); *Toney* v. *Toney*, 196 *Ga.* 666 (1) (27 S. E. 2d 296). On the trial the defendant testified as follows: "Under our contract for the year 1952 it was Mr. Norris' duty to furnish the labor for our farming operations, but I furnished part of the labor for cotton picking amounting to $656.55. The reason I

furnished this, we had a lot of cotton in the field and Mr. Norris and I were hauling cotton pickers from town, he driving the truck and I driving my car, and would go to the bank some times and get the money and take it to the farm in cash, and in this way I paid out some $656.55."

The plaintiff, however, testified that he had hired pickers at $2 per hundred, but that the defendant, without his authority, hired others at $3 per hundred, "and when I asked her about it again, she said rather than to stop them, she would pay the difference herself, that she thought she could save that much in cotton, and would pay the difference herself." It thus became a question of fact as to whether the defendant had simply advanced money to the plaintiff's hands, or whether she had an agreement with him by which the payment of certain hands, at least as to the extra $1 per hundred.pounds, was to be her private commitment and was therefore a voluntary payment which could not be recovered from the plaintiff. A charge on this subject was, therefore, authorized by the evidence. However, since the testimony of the plaintiff was that the defendant paid $500 to $600 for cotton pickers, and the testimony of the defendant was that she paid $656.55, and since the verdict of the jury was $600.92 less than the sum in the hands of the sheriff, which was the maximum amount for which a verdict in favor of the plaintiff could have been returned under the court's instructions, it is entirely reasonable to assume that the jury resolved that question in favor of the defendant, and gave her credit for the sums which she paid out to the cotton pickers. This assignment of error is without merit.

The defendant further assigns error on the charge that the verdict, if for the plaintiff, "could not be more than $2,706.66, the amount in the hands of the sheriff." It is noted that, while this sum represented the total proceeds of property upon which the plaintiff claimed his special lien, he also prayed for a general judgment against the defendant in the sum of $3,520.50. The charge as given limited the judgment which might be returned against the defendant to a sum below this figure, and was, in consequence, helpful instead of prejudicial to her. A charge, though erroneous, is not cause for reversal where favorable to the complaining party. *Crozier* v. *Goldman*, 153 *Ga.* 162 (7)

(111 S. E. 666). Nor was it subject to the complaint that it confused or misled the jury into believing they must return a verdict in favor of the plaintiff, since the only effect it could possibly have had upon the jury was to limit the amount of recovery to an amount less than that authorized by the evidence. This assignment of error is without merit.

■ As to the general grounds of the motion for a new trial, it is conceded that there was evidence to support the verdict, but it is contended that this same evidence also affirmatively disproved the plaintiff's right to recover, in that a condition precedent to the foreclosing of the lien, i.e., the completion of the contract of labor, had not been complied with. One is not entitled to enforce a laborer's lien unless he is for sufficient legal reason prevented from carrying out the contract. Code § 67-1803; *Harvey* v. *Lewis*, 19 *Ga. App.* 655 (91 S. E. 1052); *Haralson* v. *Speer*, 1 *Ga. App.* 573 (58 S. E. 142). In the affidavit of foreclosure it was alleged that "the settlement of said parties was to be made as the crops were harvested." The only testimony in the record bearing on the question of whether all the crops had been harvested was given by the plaintiff on direct examination, as follows: "Now under the farming arrangements I made with Mrs. Payne for 1952, settlement was to be made at the time the crops were harvested. After this foreclosure proceeding was brought, there was some cotton and corn left in the fields, but that part of it has no bearing on this case as it has been agreeably divided, and no fuss about that."

There is, accordingly, no issue in the case as to whether the suit was prematurely brought. The defendant made no such contention either in her pleadings or testimony. The plaintiff's testimony, which was undisputed, was that such crops as remained in the field had been the subject of a separate settlement and were not in issue in the case. Such testimony, which was the only evidence raising the question of whether all crops had been harvested, also established that, as to those which had not been, a separate agreement in the nature of a novation had been executed, and such novation, accompanied by a satisfactory division of the produce, would itself be a completed contract, and so would not prevent the institution of the foreclosure proceedings.

The evidence, although conflicting, authorized a verdict in

favor of the plaintiff. The trial court properly denied the motion for new trial.

*Judgment affirmed. Gardner, P. J., and Carlisle, J., concur.*